(C. D. 1913)

BAYER, PRETZFELDER & MILLS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 18, 1957)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: These protests are directed against the action of the collector of customs at the port of New York in refusing to allow drawback under the provisions of section 313 (a) of the Tariff Act of 1930 upon the exportation of complete watches manufactured

or produced in the United States with the use of imported duty-paid merchandise. So far as pertinent, the said section reads as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *.

The facts of importation, manufacture or production, and exportation are not in dispute, and it clearly appears that the sole ground for the refusal to allow drawback was failure on the part of the plaintiff, drawback claimant, as manufacturer or producer of the exported merchandise, to comply with the requirements of section 22.4 of the Customs Regulations of 1943, in force and effect at the times here pertinent.

On the part of the plaintiff, it is contended that the said customs regulation was not mandatory in character and that compliance therewith was not a condition precedent to the payment of drawback. It is contended that the regulation was of a directory nature only and that proof of compliance with the statute might be made before this court, and, in any event, that the plaintiff sufficiently complied with the requirements of the said regulation.

Section 22.4 of the Customs Regulations of 1943 is rather lengthy and is entitled "Identification of imported merchandise and ascertainment of quantities for allowance of drawback; establishment of drawback rates." We are of the opinion that it is unnecessary to quote the regulation in full here, for reasons which will be dealt with hereinafter and because much of the matter contained therein relates to incidents in the administration of the drawback statute which have no bearing upon the present issue.

At least, insofar as it relates to the identification of imported merchandise and the ascertainment of quantities for allowance of drawback, it is obvious that the regulation was promulgated by the Secretary of the Treasury under the authority contained in section 313 (i) of the Tariff Act of 1930, as in force and effect at the times here involved, which reads, so far as pertinent, as follows:

(i) REGULATIONS.—The Secretary of the Treasury is authorized to prescribe regulations governing (1) the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties, the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, the determination of the facts of manufacture or production of such articles in the United States and their exportation therefrom, * * *.

A regulation prescribed by the Secretary of the Treasury under the authority contained in section 313 (i), *supra*, governing "the determination of the facts of * * * exportation" was held, in *United*

*States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. (Customs) 192, C. A. D. 191, to be mandatory in character, for the reason, among others, that the said regulation was authorized by the same section of the statute which provided for the drawback privilege, and compliance with it was a condition precedent to the exercise of the privilege. The court there said:

The provision of the regulation with which we are here concerned is a reasonable and proper one (this fact has not been questioned). It was made under the specific authority granted in the same section which granted the privilege of drawback and was obviously made for the purpose of protecting the revenues in connection therewith. It is not a regulation of the character which is made under the general provision of a tariff act authorizing the making of regulations for the direction and guidance of customs officers in the discharge of their duties and which regulations have frequently been held to be merely directory. The regulation involved here is mandatory, has the full force and effect of law, and could not be waived. Compliance with it was a prerequisite to securing the claimed drawback herein involved. See *Lauricella et al.* v. *United States*, 4 Ct. Cust. Appls. 253, T. D. 33482 and cases therein cited.

From the standpoint of source of authorization, therefore, section 22.4 of the Customs Regulations of 1943, having for its purpose the carrying out of authority contained in the drawback statute itself to prescribe regulations—

* * * governing * * * the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties, the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, [and] the determination of the facts of manufacture or production of such articles in the United States * * *,

stands in the same position as the regulation which was the subject of the *Ricard-Brewster* case, *supra*. It was, for the same reasons, a regulation mandatory in character, and, if otherwise valid and reasonable, compliance with it was the sole means of establishing a right of payment of drawback.

Plaintiff has not, in direct terms, attacked the validity or reasonableness of the said regulation, but, in the brief filed in its behalf, counsel has pointed out that the regulation does not provide for the keeping of the records therein required in any particular manner or form and contends that the records which it did keep, when considered together with other evidence in support thereof, were a sufficient compliance with the regulation.

The said regulation provided, in part, that—

Each manufacturer or producer shall keep records which will establish, as to all articles manufactured or produced for exportation with benefit of drawback, the date or inclusive dates of manufacture or production, the quantity and identity of the imported duty-paid merchandise * * * used, the quantity and description of the articles manufactured or produced * * *.

It appears from the record that the processes of manufacture or production to which the imported merchandise was subjected

consisted of "casing," i. e., inserting movements into cases, whereby they became "watch heads," and/or "strapping," i. e., attaching cords, straps, or bracelets to watch heads, making them into complete watches.

The casing of the movements was done by a watchmaker, and the strapping was done by another worker. The plaintiff contends that it sufficiently maintained the identity of the imported merchandise throughout these processes and the ascertainment of the quantities of imported merchandise used and of completed watches exported in the following manner: An officer of the firm would select from its vault the imported merchandise, i. e., either movements or watch heads, which was to be used in the processes, and place it on a tray together with the cases and/or straps to be used in the manufacture or production of completed watches. The operations on the merchandise contained in the tray were performed by the watchmaker or other worker, and the tray returned to the officer for checking. It does not appear that any memorandum or notation was made, or, if made, was kept, so that a record would be available *from which record* the facts of manufacture or production and identity and quantities of the imported and exported merchandise could be established.

The supporting evidence on which plaintiff relies consists of oral testimony given at the trial as to the foregoing facts and/or the sworn statements, made more than 2 years after the occurrences related therein, of the officer of the firm who gave the materials to the workers and of the worker who strapped the watches as to their personal recollections of the facts of manufacture and production, and correspondence from which it might be inferred that completed watches were exported.

It must be remembered that the issue is *not* whether, as a matter of fact, the exported merchandise had been manufactured or produced in the United States with the use of duty-paid imported merchandise— that fact was conceded by the Government at the trial—but whether authorized and appropriate regulations, mandatory in character, regarding the keeping of certain records, were complied with. The plaintiff was unable to show that *records* were made or kept which would establish, in accordance with the requirements of section 22.4 (*a*), the quantity and identity of imported merchandise used, the date or inclusive dates of casing and/or strapping, and the quantity and description of the completed watches which resulted from these operations. Supporting evidence in the form of oral testimony or affidavits, made long after the fact, cannot, under the circumstances, substitute for the records required by the regulation.

It was indicated at the trial that the keeping of some of the records required would have been costly and out of proportion to the value of the work done. It is common knowledge that many records are

required to be kept, particularly with respect to taxing statutes, which may be costly and nonremunerative or unprofitable. We do not think that it was demonstrated that the requirement of keeping the records, called for by section 22.4 of the customs regulations, was, either generally or in connection with the particular drawback claims here involved, unreasonable to the point of invalidating the regulation.

In the brief filed in its behalf, counsel for the plaintiff cites section 22.4 (e) of the customs regulations as permitting a waiver by the Bureau of Customs of the requirement of keeping any or all of the records called for by section 22.4, arguing that, inasmuch as compliance with the regulation might be waived, it was not a condition precedent to recovering drawback.

The said subsection, as in effect at the times here pertinent, reads as follows:

(e)  In cases where it appears to the satisfaction of the Bureau that it is impracticable for the manufacturer or producer to keep records of all the information required for the determination of the drawback which may accrue to the products manufactured or produced by him, complementary records covering the information not available to the manufacturer or producer may be kept by the person in the United States for whose account the products are manufactured or produced, and sworn abstracts of such records shall be filed with the drawback entry.

Section 22.4 (e) was not a permissive waiver of the requirement of keeping records, but provided that, under certain circumstances, some records might be kept by a person other than the manufacturer or producer. We fail to find anything therein which would take the regulation out of the category of mandatory regulations or would dispense with the requirement of keeping records, which requirement was not met by the claimant in this case.

On the facts of this case and the law applicable thereto, we have no other course than to overrule the claim made in each of the protests. Judgment will issue accordingly.